USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/18/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STUDIO – D,

                  Plaintiff,

        -against-

WAVERLY STAGING & DESIGN LLC,
JANE SAIDENBERG, and ZOE DIAMANT,

                Defendants.

1:23-cv-09001-MKV

**OPINION AND ORDER
DENYING IN PART AND
GRANTING IN PART
MOTION TO DISMISS**

**MARY KAY VYSKOCIL, United States District Judge:**

Plaintiff Studio – D ("Plaintiff or "Studio D") brought this action against Defendants The Waverly Group, Waverly Staging & Design LLC, Jane Saidenberg, and Zoe Diamant. [ECF No. 2].[1] Plaintiff asserts against Defendant Diamant claims for: (1) Misappropriation of Trade Secrets under the Federal Defend Trade Secrets Act of 2016 (Count I), (2) Misappropriation of Confidential Information under New York Law (Count II), (3) Unfair Competition under New York Law (Counts III and IV), (4) Unjust Enrichment under New York Law (Count V), (5) Breach of Fiduciary Duty of Loyalty under New York Law (Count VI), (6) Breach of Fiduciary Duty of Good Faith and Fair Dealing under New York Law (Count VII), (7) Tortious Interference with Economic Relations (Count VIII), and (8) Breach of Contract (Count IX). [2] *See* Second Amended Complaint ("SAC"), [ECF No. 46].

---

[1] Plaintiff filed its First Amended Complaint, [ECF No. 27], a few months after it commenced this action. [ECF No. 2]. Thereafter Plaintiff voluntarily dismissed Defendant Waverly Group from this action, [ECF No. 38], and subsequently, filed the operative Second Amended Complaint ("SAC"). [ECF No. 46].

[2] Counts I–V, and Count VIII are asserted against all Defendants, Counts VI, VII, and IX are asserted against only Defendants Saidenberg and Diamant.

Before the Court is a motion by Diamant, one of the Defendants in this case, to dismiss all claims against her. [ECF No. 49]. In support of her motion to dismiss, Defendant Diamant submitted a memorandum of law, ("Def. Mem.," [ECF No. 50]). Plaintiff opposed. ("Pl. Opp.," [ECF No. 55]). Defendant replied. ("Def. Reply," [ECF No. 60]). For the reasons discussed below, Defendant's motion is DENIED in part and GRANTED in part.

## FACTUAL BACKGROUND[3]

Plaintiff is a company in the real estate staging business. SAC ¶ 2. The term "staging" refers to the display of furnishings and home decor with the goal of enhancing the appearance and value of a property in connection with its sale or lease. SAC ¶ 13. This allegedly involves both artistic and technical expertise. SAC ¶ 13. Studio D's staging business involves "(1) customer acquisition and maintenance; (2) curation and sourcing of furnishings, art and décor to be staged; and (3) the planning, logistical and operational aspects of implementing the staging projects." SAC ¶ 14. Plaintiff alleges that each of these three categories includes a variety of confidential and proprietary business information that is of enormous value to Studio D, would be of enormous value to Studio's competitors, and that Studio D has taken substantial steps to protect from exposure. SAC ¶¶ 15–17. Across these three categories Studio D alleges that it has distilled and maintained this confidential information into several different lists: (1) client list, (2) broker/agent list, (3) developer list, (4) vendor list, (5) rate sheets, and (6) pack lists. SAC ¶¶ 20–24.

Studio D alleges that maintaining the confidentiality of this information allows it to maintain its competitive advantage over competitors and at all times Studio D employed measures to safeguard the secrecy of this information. SAC ¶¶ 26–27. In particular, all employees and

---

[3] The facts are taken from the SAC and are accepted as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

independent contractors are and were required to read and sign a confidentiality agreement contained in the employee handbook. SAC ¶ 27.

Defendant Jane Saidenberg joined Studio D in 2014 and eventually was the Managing Director. SAC ¶ 29, 38. Defendant Zoe Diamant initially was hired to work part-time in the accounts receivable department of Studio D New York-area office. SAC ¶¶ 65, 68. When Defendant Diamant was initially hired she received and signed a copy of the Studio D employee handbook, which contained a number of provisions governing employee conduct and safeguarding confidential information. SAC ¶ 67. In her role in accounts receivable, she was exposed to Studio D's client list. SAC ¶ 68. Defendant Diamant was then promoted to a full-time employee and given the title of Assistant of Director of Operations. SAC ¶ 69. In that role, Defendant Diamant had access to Studio D's client list, broker/agent list, developer list, vendor list, rate sheets, pack lists, and other confidential information. SAC ¶ 70. Then Defendant Diamant was promoted to Director of Accounts in or around June 2021. SAC ¶ 73. In that position she allegedly had even more access to Studio D's trade secrets and confidential information including pricing information, staging proposals, and contracts. SAC ¶ 73.

Defendant Diamant informed Plaintiff that she was being recruited by Defendant Jane Saidenberg, who had previously worked at Studio D, ultimately as a managing director, SAC ¶¶ 29, 38, to come work with her at Defendant Waverly. SAC ¶ 78. Plaintiff alleges that Diamant represented that she would be working in an administrative role in the Human Resources department at Waverly and in no client-facing or operational role. SAC ¶¶ 78–79. Gail Dunnett, Studio D's chief executive, permitted Diamant to work for both Studio D and Waverly during this transitional period mostly due to Diamant's representations about her role at Waverly. SAC ¶ 79. Ms. Dunnett alleges that Diamant agreed to an "ethical firewall" and she trusted Diamant not to

disclose and/or use any of Studio D's trade secrets, confidential or proprietary information, or documents. SAC ¶ 81.

Plaintiff alleges that while employed at Studio D, Diamant shared confidential information and documents including Studio D trade secrets with Defendant Saidenberg. SAC ¶¶ 83, 87. In particular Plaintiff alleges that, jointly with Defendant Saidenberg, Diamant shared and contributed confidential information and proprietary documents that amounted to Studio D's trade secrets into a Google Drive that was also eventually disclosed to Defendant Waverly. SAC ¶¶ 83, 87, 121–23. Plaintiff alleges that Diamant was labeled an "editor" on numerous documents contained in this Google Drive. SAC ¶127. Furthermore, Plaintiff alleges that a review of the documents contributed to the Google Drive show that Studio D documents were relabeled as Waverly work product and incorporated confidential information from Studio D's client list, broker/agent list, developer list, rate sheets, and pack lists. SAC ¶¶ 26–27, 145–49.

Plaintiff alleges that Diamant knew that absent her misleading representations to Ms. Dunnet about her role at Defendant Waverly, Studio D would not have permitted Defendant Diamant to work for both companies simultaneously. SAC ¶¶ 85–86. Plaintiff alleges that these misrepresentations enabled Defendant Diamant to improperly acquire, disclose, and use Studio D's trade secrets, confidential information, and documents. SAC ¶¶ 86, 111.

Eventually Diamant discontinued working for Studio D and began working full time for Waverly. SAC ¶ 91. Plaintiff alleges that it later learned Diamant's role at Waverly was not limited to HR administration work and instead was an operational and outward-facing role that involved communicating with clients and preparing staging proposals. SAC ¶ 95. Plaintiff alleges that in Diamant's role at Waverly, Diamant used Studio D's trade secrets to benefit herself and

other Defendants.  SAC ¶ 97.  Specifically, Plaintiff alleges that Diamant reached out to Studio D's clients, brokers/agents, and developers.  SAC ¶ 95.

Plaintiff alleges that as a result of Diamant's actions, Studio D has suffered a significant loss of business, approximately $2 million in Studio D's annual revenue for each year since Defendant Saidenberg left in 2019.  SAC ¶ 154.

## LEGAL STANDARDS

To survive a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  More specifically, a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  The Court must " 'accept[ ] all of the complaint's factual allegations as true and draw[ ] all reasonable inferences in the plaintiff's favor.' " *Siegel v. HSBC North America Holdings, Inc.*, 933 F.3d 217, 222 (2d Cir. 2019) (quoting *Giunta v. Dingman*, 893 F.3d 73, 78–79 (2d Cir. 2018)).  However, conclusory allegations "are not entitled to the assumption of truth" and are insufficient to state a plausible claim.  *Iqbal*, 556 U.S. at 678–79.

## DISCUSSION

I.    **Counts I and II (Misappropriation of Trade Secrets Under The Defend Trade Secrets Act and Misappropriation of Confidential Information Under New York Law)**

To state a claim for misappropriation under the federal Defend Trade Secrets Act ("DTSA"), a plaintiff must allege that it possessed a trade secret that the defendant misappropriated.  18 U.S.C. § 1836(b)(1).  Plaintiff's parallel state law claim is a common law claim for misappropriation of confidential information.  Under New York law, to state a claim for

misappropriation of confidential information, a plaintiff must allege that the defendant used the plaintiff's confidential information for the purpose of securing a competitive advantage. *See Bender Ins. Agency, Inc. v. Treiber Ins. Agency, Inc.*, 283 A.D.2d 448, 450, 729 N.Y.S.2d 142, 144–45 (2nd Dep't 2001); *B-S Indus. Contractors Inc. v. Burns Bros. Contractors Inc.*, 256 A.D.2d 963, 965, 681 N.Y.S.2d 897, 899 (3rd Dep't 1998); *see also Trahan v. Lazar*, 457 F. Supp. 3d 323, 356 (S.D.N.Y. 2020).    In this Circuit, claims for unfair competition premised on the misappropriation of confidential information are routinely analyzed using the same standards as claims for misappropriation of trade secrets. *See Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) ("Since '[t]he requirements are similar,' courts have found that a '[c]omplaint sufficiently plead[ing] a DTSA claim . . . also states a claim for misappropriation of trade secrets under New York law.' "); *see also Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143, 179 (E.D.N.Y. 2018) ("A claim for unfair competition based on the same allegations as a claim for misappropriation of trade secrets is treated as a single cause of action.").

A. *Possession of A Trade Secret*

Under the DTSA, the term "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" if (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

Plaintiff alleges that its' client list, agent/broker list, developer list, vendor list, rate sheets, pack lists, pricing information, and the propriety forms created with that information are trade secrets because they were developed over twenty-years, cultivated through the efforts of Plaintiff

developing close relationships with clients, vendors, agents/brokers, and this information was not publicly available.  SAC ¶¶ 20–23, 25, 156.  Defendant Diamant does not dispute that Plaintiff's Second Amended Complaint sufficiently alleges facts that Plaintiff possessed a trade secret.  At the pleading stage the facts alleged in Plaintiff's Second Amended Complaint, as detailed above, are sufficient to plausibly plead that Plaintiff possessed a trade secret.  *See Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 673–74 (S.D.N.Y. 2022) (candidate and client lists that were developed through plaintiff's own diligence and expenditure of resources and are not known or easily obtainable outside of Plaintiff's business was entitled, at least at the pleadings stage, to trade secret protection).

Plaintiff also alleges facts to show that it took reasonable measures to keep such information secret including, requiring employees and independent contractors to read and sign a confidentiality agreement contained in Studio D's employee handbook, sharing documents and information with employees and independent contractors on a need-to-know basis, storing documents so that the information can only be viewed and edited by individuals who received an invitation from Studio D, and regularly reminding employees of the confidential nature of these materials.  SAC ¶ 27–28, 157; *see Ad Lightning Inc. v. Clean.io, Inc.,* No. 19-CV-7367, 2020 WL 4570047, at *2 (S.D.N.Y. Aug. 7, 2020) (reasonable measures can include "the use of confidentiality agreements, password-protection, sharing information with employees only on a need-to-know basis, emphasizing the need to keep the information confidential in an employee handbook, and frequently reminding employees of the need to maintain confidentiality").

Plaintiff  sufficiently alleges that this information derives economic value from not being generally known because it allows Plaintiff to maintain a competitive advantage over its competitors in securing deals, completing projects, and retaining clients.  SAC ¶¶ 15–17 24–26,

71.  Plaintiff specifically alleges that this information would be extremely valuable to competitors "to bid on, and execute, staging projects" and it remaining not widely known allows Plaintiff to maintain competitive advantage in securing and completing projects.  SAC ¶¶ 24–25.

At the pleading stage these allegations are sufficient to meet the first prong of the DTSA test.  *See ExpertConnect, L.L.C. v. Fowler*, No. 18-CV-4828, 2019 WL 3004161, at *5 (S.D.N.Y. July 10, 2019) (documents were trade secrets and had economic value "because the information could be used to underprice [plaintiff] and divert customers"); *see also Catalyst Advisors, L.P.*, 602 F. Supp. 3d at 673–74 (allegations that the alleged trade secret "gives Plaintiff a competitive advantage in the industry suggests that this information derives independent economic value") (internal citations and quotations omitted).

### B.  *Misappropriation of Plaintiff's Trade Secret*

Under the DTSA, a complaint must also plead that the defendant misappropriated a trade secret (1) by acquiring a trade secret by improper means, or (2) disclosing or using the trade secret without consent.  *See Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009); *see also AUA Private Equity Partners, LLC v. Soto*, No. 17-CV-8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018) (citing 18 U.S.C. § 1839(5)).  Thus, the DTSA provides for "three theories of liability: [i] acquisition, [ii] disclosure, or [iii] use."  *Integra USA, Inc.* v. *Grain*, No. 19-CV-8752, 2019 WL 6030100, at *2 (S.D.N.Y. Nov. 14, 2019).  "Improper means" can involve "theft . . . [or] breach or inducement of a breach of a duty to maintain secrecy," 18 U.S.C. § 1839(6)(A).  A duty to maintain secrecy can derive from a contractual agreement not to disclose

or disseminate information. *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 511 (S.D.N.Y. 2017).

Defendant disputes that the Second Amended Complaint sufficiently alleges facts, aside from conclusory assertions, that Defendant Diamant misappropriated Plaintiff's trade secrets. Def. Mem. at 8–9. Defendant argues that the only facts in the Second Amended Complaint alleging misappropriation by Defendant Diamant are that "at some unknown time . . . Ms. Saidenberg placed documents on a Google drive folder to which Ms. Diamant also had 'editor access." Def. Mem. at 9. Defendant Diamant argues that these allegations are conclusory and provide no facts that Defendant Diamant shared, contributed, or edited the propriety documents contained within this Google Drive folder. Def. Mem. at 9.

Plaintiff argues that the Second Amended Complaint sufficiently pleads that Defendant Diamant misappropriated Plaintiff's trade secrets because there are facts alleging that Defendant Diamant acquired the trade secrets by improper means, disclosed those trade secrets to third parties, and used those trade secrets without consent of Plaintiff. Pl. Opp. at 9–10.

Plaintiff alleges facts that plausibly plead misappropriation involving acquisition of trade secrets by improper means. First, the Second Amended Complaint alleges that Defendant Diamant improperly acquired Plaintiff's trade secrets when she "made false representations" to Plaintiff that while she worked for both companies her role at Defendant Waverly was limited to the HR department and would not involve "any competitive activities, nor [] any client-facing or operational roles." SAC ¶¶ 78–80. Plaintiff further alleges that these false representations are what allowed Diamant to continue to access and acquire Plaintiff's trade secrets in violation of her duty to maintain secrecy and in violation of the confidentiality provisions in the employee handbook. SAC ¶¶ 86, 160–61. And, as previously noted, Plaintiff alleges that Diamant, along

with Co-Defendant Saidenberg, uploaded documents containing Plaintiff's trade secrets onto a Google Drive on which she was an editor, SAC ¶¶ 83, 87, 121–23, 127, and that information was subsequently shared with Defendant Waverly.  At this stage, Plaintiff has sufficiently alleged facts, accepted as true, that Defendant Diamant misappropriated Plaintiff's trade secrets. *See TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 193 (E.D.N.Y. 2024) ("Plaintiff plausibly alleges that [defendant] acquired [plaintiff's] trade secrets in violation of the policies in the Employee Handbook and the Addenda to the Handbook" when defendant "accessed, downloaded, and transferred to her personal Google Drive substantial and significant" confidential documents and information").

Furthermore, the Second Amended Complaint also alleges that Diamant without Studio D's consent, and against its express wishes and interests, disclosed Plaintiff's trade secrets to third parties, including Co-Defendants Saidenberg and Waverly.  SAC ¶¶ 83, 87, 97 162.  This is another theory of misappropriation that is sufficiently plead.  Plaintiff specifically alleges that Diamant "jointly maintained and contributed" to a Google Drive folder shared with Defendant Saidenberg that disclosed Plaintiff's trade secrets and confidential documents when Defendant Saidenberg was no longer an employee at Studio D.  SAC ¶¶ 83, 121–27.  Plaintiff separately alleges that Diamant disclosed further trade secrets when she provided information to Defendant Saidenberg related to changes in Studio D's vendor lists.  SAC ¶ 87.  Plaintiff alleges that at all relevant times Diamant knew she was not permitted to disclose Plaintiff's trade secrets to any third parties.  SAC ¶¶ 88–90, 93, 95, 145–46, 162, 164, 68.  These allegations, accepted as true, are sufficient to plead misappropriation.  *See Hedgeye Risk Mgmt., LLC v. Dale*, No. 21-CV-3687, 2023 WL 6386845, at *8 (S.D.N.Y. Sept. 29, 2023) ("shortly before [defendant] resigned from [plaintiff], he copied

dozens of computer files . . . from [defendant's] work computer to his private Dropbox account in the cloud" and he then shared those confidential documents with third parties).

Diamant argues that Plaintiff's reliance on *Hedgeye* is misplaced, but in her attempt to distinguish the facts in *Hedgeye* from the facts alleged here Defendant Diamant raises improper factual arguments. Def. Reply at 4–5. For example, Defendant contends that in *Hedgeye*, unlike here, there are allegations that the defendant actually uploaded documents, whereas here, there are only allegations that Diamant was an "editor" on the Google Drive. Def. Reply at 5. Diamant claims the editor title was "merely assigned to her" and "does not necessarily presuppose that any actual editing or drafting was done." Def. Reply at 5. However, the Second Amended Complaint actually alleges that Diamant "jointly maintained and contributed" to the Google Drive folder and was labeled an "editor" on numerous specific documents contained in the Google Drive. SAC ¶¶ 83, 121–27. On a motion to dismiss the Court must accept those allegations as true and draw all reasonable inferences in favor of the Plaintiff. *See Siegel*, 933 F.3d at 222. The Court cannot as Defendant invites it to do, weigh competing facts raised by Defendant. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (Rule 12(b)(6) "assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it."); *see also Cartiga, LLC v. Aquino*, No. 24-CV-1014, 2025 WL 388804 at *7–8 (S.D.N.Y. Feb. 4, 2025) ("[defendant] counters that she lawfully accessed trade secrets to do her job and used these only while employed by [plaintiff] . . . [b]ut that contention conflicts with the AC's allegations, which must be credited at this stage,") (internal citations and quotation omitted).

Accordingly, Plaintiff's misappropriation claims, under DTSA and New York law, are sufficiently pleaded.

## II.   Count III and IV (Unfair Competition)

"The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 505 (S.D.N.Y. 2018) (citations omitted).  The New York Court of Appeals has explained that it has "long recognized two theories of common-law unfair competition: palming off and misappropriation." *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 850 N.Y.S.2d 366, 880 N.E.2d 852, 858 (2007); *see also Sidney Frank Importing Co. v. Beam Inc.*, 998 F.Supp.2d 193, 208 (S.D.N.Y.2014) (same).  The first theory, "palming off" is the "sale of the goods of one manufacturer as those of another." *ITC Ltd.*, 9 N.Y.3d at 476, 880 N.E.2d at 858.  The second theory, misappropriation, is "misappropriat[ing] the results of the skill, expenditures and labors of a competitor." *Id.* at 477.

Plaintiff alleges two causes of action for unfair competition.  The first, Count III, is "Unfair Competition under New York Law – Reverse Passing off and False Designation," SAC ¶¶ 181–189, and the second, Count IV, is "Unfair Competition under New York law – Misappropriation." SAC ¶¶ 190–195.  Defendant Diamant argues both Counts fail to state a claim.

### A.  *Unfair Competition Based On Reverse Passing Off*

Plaintiff's first claim for unfair competition is neither of the theories recognized—palming off and misappropriation—by the New York Court of Appeals in *ITC Ltd.*, 9 N.Y.3d at 476, 880 N.E.2d at 858.  Instead, Plaintiff pleads a purported species of the palming/passing off theory of unfair competition claim called "reverse passing off."  SAC ¶¶ 181–189.

Defendant argues that Plaintiff's claim for unfair competition by reverse passing off should be dismissed because  New York has never recognized a cause of action for unfair competition by

reverse passing off.  Def. Mem. at 10–13.  Plaintiff contends that Defendant's "argument ignores that New York courts avoid rigid labels or placing restriction on what conduct falls within the tort."  Pl. Opp. at 19.

The Court finds that the reasoning and holding in *Aviation Finance Company. v. Chaput*, is particularly persuasive in resolving this issue.  No. 14-CV-8313, 2015 WL 13203653, at *21–23 (S.D.N.Y. Mar. 12, 2015).  In that case, plaintiffs asserted a claim for reverse passing off under the Lanham Act and a claim for common law unfair competition under the reverse palming off theory.  *Id.* at *21.  Judge McMahon explained that "Plaintiffs have not established that New York even recognizes a cause of action for unfair competition by reverse passing off."  *Id.* at *22.  Judge McMahon went on to explain that "[t]o the extent that New York courts have addressed the issue [of reverse passing off], it appears that they would not recognize" it.  *Id.*  In coming to this conclusion, the *Aviation Finance* court reasoned that in *Mastro Plastics Corporation v. Emenee Industries*, the court held that the plaintiff failed to state a claim for unfair competition based on a theory of reverse passing off.  *Id.* (citing *Mastro Plastics Corp. v. Emenee Indus., Inc.*, 16 A.D.2d 420, 422, 228 N.Y.S.2d 514, 517, *aff'd*, 12 N.Y.2d 826, 187 N.E.2d 360 (1962)).  Specifically, the *Mastro* court found that the defendant who purchased the plaintiff's product, removed the plaintiff's trademark, substituted the defendant's mark, and used plaintiff's product as a sample and used photographs of plaintiff's product (with plaintiff's trademark concealed) to advertise its own product did not state a claim for unfair competition.  *See Mastro Plastics Corp.*, 16 A.D.2d at 422.  Furthermore, as Judge McMahon persuasively reasoned "the New York Court of Appeals implied that reverse passing off might be actionable under the Lanham Act, but not under common law" because the *Mastro* opinion was affirmed by the New York Court of Appeals without opinion and the Court only granted leave to the plaintiff "to serve an amended complaint based on the

Lanham Act." *Aviation Finance Company*, 2015 WL 13203653, at *23. Finally, the *Aviation* court explained that "Plaintiffs have not cited any case law suggesting that New York recognizes reverse palming off as a species of unfair competition" and instead "Plaintiffs simply assume such a tort exits, and rely on cases describing unfair competition in general as similarly defined under New York and federal law." *Id.*

The same analysis and reasoning underlying the dismissal of the reverse passing off claim in *Aviation Finance* are applicable here. Plaintiff relies on New York cases that merely describe unfair competition as an adaptable tort and further relies on federal cases that do not themselves cite to any New York opinions that have affirmatively recognized such a claim. *See e.g.*, *American Movie Classics Co. v. Turner Ent. Co.*, 922 F. Supp. 926 (S.D.N.Y. 1996). The Court concurs with the conclusion in *Aviation Finance* that it appears that New York Courts have not recognized reverse passing off as an appropriate theory of unfair competition under New York law. Thus, Plaintiff has failed to state a claim.

### B. *Unfair Competition Based On Misappropriation*

The second theory of unfair competition that Plaintiff asserts is based on misappropriation. SAC ¶¶ 190–95. A claim for unfair competition based on misappropriation addresses "misappropriat[ing] the results of the skill, expenditures and labors of a competitor." *ITC Ltd.*, 9 N.Y.3d at 476, 880 N.E.2d at 858.

Defendant Diamant argues that Plaintiff's unfair competition claim in Counts IV, is based on the same conduct underlying its misappropriation claims in Counts I and II, and therefore are duplicative and must be dismissed. Def. Mem. at 12. Plaintiff argues that its unfair competition based on misappropriation, should not be dismissed as duplicative because "[i]t is appropriate to

simultaneously plead trade secrets and unfair competition claims based on the same underlying misconduct, because the latter tort casts a wider net." Pl. Opp. at 19.

Plaintiff's unfair competition claim based on misappropriation, which is based on the same underlying conduct as Plaintiff's common law misappropriation claim (Count II), is duplicative and must be dismissed. *See TileBar*, 723 F. Supp. 3d at 199–200 (dismissing unfair competition claim as duplicative because it was based on the same allegations as plaintiff's misappropriation of trade secrets claim); *see also Uni-Sys., LLC*, 350 F. Supp. 3d at 179 ("Plaintiff's unfair competition claim fails to state a cause of action as it fails to allege tortious conduct *separate from* its claim of misappropriation of trade secrets.") (emphasis added). Plaintiff's unfair competition claim by misappropriation is based on the same underlying factual allegations of its first two claims, because the Court has concluded those claims were sufficiently plead this claim is duplicative and must be dismissed.

### III.    Count V (Unjust Enrichment)

To state a claim for unjust enrichment, the plaintiff must allege "(1) the other party was enriched, (2) at [plainitff's] expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182, 944 N.E.2d 1104, 1110 (2011) (alteration in original and internal citations and quotations omitted); *see also Pauwels v. Deloitte LLP*, 83 F.4th 171, 189 (2d Cir. 2023).

Plaintiff alleges that Defendant Diamant was enriched, to Studio D's detriment, because her alleged "use of Studio D's trade secrets, confidential information, proprietary information, photographs of studio D's past staging projects, studio D's staging agreements (and terms and conditions), and other industry know-how resulted in" her receiving income that she would not have otherwise received, including salary, commissions and stock or equity in Waverly." SAC ¶¶

197, 201.  Defendant Diamant argues that Plaintiff's claim must fail because it fails to allege specific, non-conclusory allegations of how Diamant was enriched.  Def. Reply at 7–8. Specifically Diamant argues that she "did not receive something of value that belong to studio D" and instead she only received her salary.  Def. Mem. at 14–15, Def. Reply at 7–8.

New York's highest court has made clear that "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177, 1185 (2012)).  Nor is it "a catchall cause of action to be used when others fail."  *Reyes v. Upfield US Inc.*, 694 F. Supp. 3d 408, 430 (S.D.N.Y. 2023) (quoting *Corsello*, 967 N.E.2d at 1185).  Instead,  a claim for unjust enrichment "is available only in unusual circumstances when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Id.* at 431 (quoting *Corsello*, 967 N.E.2d at 1185).

Here, Plaintiff has offered no explanation of how its unjust enrichment claim differs from its other causes of action, which seek the same relief for the same underlying conduct.  *See Campbell v. Whole Foods Mkt. Grp.*, 516 F. Supp. 3d 370, 393 (S.D.N.Y. 2021) (an unjust enrichment claim "will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action"); *see also Bytemark, Inc.*, 342 F. Supp. 3d at 512 (collecting cases).  As such, Plaintiff's unjust enrichment claim must be dismissed as duplicative of its other claims.

## IV.    Count VI and Count VII (Breach of Fiduciary Duty)

Plaintiff alleges two causes of action against Defendant Diamant for breach of fiduciary duty.  The first is based on the "faithless servant" doctrine, SAC ¶¶ 203–211, and the second is based on the duty of good faith and fair dealing.  SAC ¶¶ 212–217.

To state a claim for breach of fiduciary duty under New York law, a plaintiff must show (1) the existence of a fiduciary duty; (2) a knowing breach of that duty; and (3) resulting damages. *See EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19–20, 832 N.E.2d 26, 313 (2005); *see also Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citing *Barrett v. Freifeld*, 64 A.D.3d 736, 739, 883 N.Y.S.2d 305, 308, (2d Dep't 2009)).  "Under New York law, an employee owes a duty of good faith and loyalty to his employer." *Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 659 (S.D.N.Y. 2005), *aff'd sub nom. Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006).  Breach of that duty is actionable as a breach of fiduciary duty.  *See Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 92 (S.D.N.Y. 2022).

The faithless servant doctrine is rooted in an agency theory.  *See Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 202 (2d Cir. 2003).  Under New York law an employee is obligated "to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 521 (S.D.N.Y. 2011) (internal quotations and citations omitted).  "[T]here are two standards for determining whether an employee's conduct is encompassed by the faithless servant doctrine: (1) misconduct and unfaithfulness substantially violate the contract of service which requires a persistent pattern, and (2) "misconduct by an employee that rises to the level of a breach of a duty of loyalty or good faith." *JAPNA, Inc. v. SELFX Innovations Inc.*, No. 22-CV-

10753, 2024 WL 1250269, at *9 (S.D.N.Y. Mar. 22, 2024) (internal quotations and citations omitted); *see also Phansalkar*, 344 F.3d at 202.

"Some federal courts treat breach of fiduciary duty claims and claims based on the faithless servant doctrine as doctrinally distinct" while "many courts do not so distinguish the two claims, and some even note that they are essentially the same." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 242 (2d Cir. 2020) (collecting cases); *see also Johnson v. Summit Acquisitions, LLC*, No. 15-CV-1193, 2019 WL 1427273, at *9 (N.D.N.Y. Mar. 29, 2019) ("Breach of duty of loyalty and violation of the faithless servant doctrine are essentially the same claims, except that under the faithless servant doctrine, the employer need not show that the employee caused damages.").

Here, the factual allegations contained in the Second Amended Complaint underlying both claims are overlapping and as such the Court will examine the claims together.  The Second Amended Complaint sufficiently allege facts, accepted as true, to support Plaintiff's claims for breach of fiduciary duty.  Plaintiff alleges that Defendant Diamant owed Plaintiff a duty of loyalty, both pursuant to the alleged contract and independent of any contractual agreement, because Defendant Diamant was an employee of Studio – D.  SAC ¶¶ 208, 214.  Plaintiff alleges that as Studio D's employee, Defendant Diamant was trusted not to disclose or use, except on behalf of Studio D, any of Studio D's trade secrets.  SAC ¶ 81.  Plaintiff alleges that this duty was substantially breached, on multiple occasions, when Diamant disclosed Studio D's trade secrets and confidential information to third parties, and exploited Studio D's trade secrets and confidential information for the benefit of herself and third parties.  SAC ¶¶ 209–10, 215–17.

In particular, Plaintiff alleges that there were multiple instances of misconduct and misappropriation, SAC ¶¶ 83, 87, that amounted to a breach of her duty of loyalty to Studio D and breached provisions of the alleged contract.  SAC ¶ 67.  Plaintiff alleges that these breaches

occurred during and after her employment at Studio D, for a period of at least three years.  SAC ¶ 83.  At this stage, these allegations are sufficient.  *See JAPNA, Inc.*, No. 22-CV-10753, 2024 WL 1250269, at *10 ("Plaintiff alleges [defendant] breached Diamant's fiduciary duty to [plaintiff] by engaging in repeated acts of disloyalty to [plaintiff], including by misappropriating [plaintiff's] trade secrets, and transferring the Works and passwords to herself and [other] Defendants"  the "persistent pattern of misconduct by transferring confidential information to herself and to Defendants" was sufficient at the pleadings stage) (internal citations and quotations omitted); *see also Regency NYC, Inc. v. Atkinson*, No. 23-CV-5479, 2024 WL 4337486, at *7 (S.D.N.Y. Sept. 27, 2024) (misappropriation of trade secrets was sufficient to support a claim for breach of duty of loyalty under the faithless servant doctrine because "Plaintiff also sufficiently alleges that [defendant's] conduct was substantial, in part because it was not limited to a single isolated incident").  These allegations that Defendant allegedly engaged in multiple acts of misconduct and misappropriation of trade secrets over the course of at least three years of her employment with Plaintiff, if proven true, could sustain liability for breach of fiduciary duties.  As such, at the pleading stage, Plaintiff's claims survive dismissal.

## V.    Count VIII (Tortious Interference With Economic Relations)

To prevail on a claim under New York law for tortious interference with economic relations, a plaintiff "must prove that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship."  *Camel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003) (citing *Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108–09 (2d Cir. 1997)); *see also Ray v. Stockton*, 162 A.D.3d 1677, 1679 80 N.Y.S.3d 569, 572 (4th Dep't 2018).

The Second Amended Complaint alleges that Defendant Diamant, along with the other Defendants, wrongfully interfered with Studio D's current and prospective business relationships with its customers in the greater New York metropolitan area. SAC ¶ 221. Plaintiff alleges that Diamant interfered with Studio D's current and prospective business relationships by improperly using Studio D's trade secrets and confidential information to communicate with and market to/from Studio D's clients, broker/agents, real estate developers and vendors for the purpose of misappropriating those business relationships for the benefit of Defendants. SAC ¶ 222. Plaintiff also alleges Studio D has suffered and continues to suffer significant harm, including the loss of a significant number of its New York-based business relationships with clients, agents, brokers, developers and vendors, and millions of dollars in lost revenue as a result of Defendant's conduct. SAC ¶¶ 153, 224.

Defendant asserts that apart from "bare-bones, conclusory assertions, the Second Amended Complaint offers no specific factual details" to support this claim. Def. Mem. at 19. Defendant argues that there are no facts alleging that she persuaded any specific Studio D clients, vendors, brokers or agents to stop working with Studio D. Def. Mem. at 19–20. Plaintiff counters that she is not required to recite any particular level of detail and the facts alleged are sufficient to support a plausible claim. Pl. Opp. at 24.

The Second Amended Complaint fails to plead facts sufficient to maintain a claim for tortious interference with prospective economic advantage and therefore must be dismissed. Plaintiff fails to plead facts that it had a concrete business relationship with any specific third parties. At best, Plaintiff alleges in the most general terms, that its New York-based business was harmed. *See Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 483 (S.D.N.Y. 2022) (dismissing tortious interference claim because complaint failed to identify any concrete

relationship with a particular customer and only alleged "generic references to customer relationships" which were insufficient); *see also Plasticware, LLC v. Flint Hills Resources, LP*, 852 F. Supp. 2d 398, 402 (S.D.N.Y 2012) (dismissing tortious interference claim because Plaintiff failed to adequately allege "*specific* business relationships with which Defendant allegedly interfered" and instead referred to "existing customers," and "major companies with which it has strong business relationships") (emphasis in original). Accordingly, Defendant's motion to dismiss Count VIII is granted.

## VI.    Count IX (Breach of Contract)

Under New York law, to state a claim for breach of contract "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Johnson v. Nextel Commc'ns*, 660 F.3d 131, 142 (2d Cir. 2011) (applying New York law).

Defendant argues that the breach of contract claim must be dismissed because the "contract" alleged by Plaintiff is merely the signed Studio D Employee Handbook which is not sufficient to turn her at-will employment into a contractual relationship. Def. Mem. at 20. Plaintiff argues that whether the signed Studio D Employee Handbook qualifies as a contract is a mixed question of law and fact and at this stage the allegations pleaded are sufficient to state a claim. Pl. Opp. at 25.

Plaintiff has sufficiently pleaded enough facts, accepted as true, to sustain claim for breach of contract against Defendant Diamant. First, Plaintiff has pleaded the formation of a contract between the parties which occurred when Defendant Diamant signed the Studio D Employee Handbook. SAC ¶¶ 67, 228. Diamant does not deny that she signed the Employee Handbook;

instead, she argues that a signed employee handbook does not amount to an enforceable contract. Def. Mem. at 25. However, an employee handbook can, depending on the facts and circumstances, be the basis for a breach of contract claim. *See Baron v. Port Auth. of New York & New Jersey*, 271 F.3d 81, 85 (2d Cir. 2001) (citing *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 87–89 (2d Cir. 1998) (holding that policies set out in employee handbook formed implied contractual obligations).

A copy of the signed Employee Handbook was not attached to the Second Amended Complaint or included as an exhibit to any of the briefing related to this motion to dismiss. Thus, the Court cannot determine if there is express language included within the handbook making it clear, as a matter of law, whether it is a contract. *See Smith v. Shaw's Supermarkets, Inc.*, 809 F. App'x 30, 32 (2d Cir. 2020) ("Handbook was permeated with conditional and cautionary language that communicated the absence of an intent to be bound); *Doe v. French*, 458 F. App'x 21, 23 (2d Cir. 2012) ("handbook contained an explicit disclaimer that it did not constitute an employment contract"); *see also Kunda v. Caremark PhC, L.L.C.*, 119 F. Supp. 3d 56, 61–62 (E.D.N.Y. 2015) (same). Thus, at this stage, the Court cannot conclude as a matter of law that this signed employee handbook does not amount to a contract.

Plaintiff also alleges that it performed its obligations under the agreement by paying wages and commissions to Diamant over the course of her term of employment. SAC ¶ 230. Plaintiff alleges that Defendant Diamant breached various provisions contained in the signed Employee Handbook, including her obligations to safeguard confidential information and avoid conflicts of interest, when she allegedly shared confidential information and documents with Defendants Saidenberg and Waverly. SAC ¶¶ 67, 83, 87, 122, 231. Finally, Plaintiff alleges that it suffered damages as a result of Defendant Diamant's breach. SAC ¶¶ 154, 231.

Accordingly, Plaintiff's breach of contract claim against Defendant Diamant has been sufficiently pleaded, at least at this stage, to survive Defendant's motion to dismiss.

## **CONCLUSION**

For the reasons stated above, Defendant Diamant's motion to dismiss is GRANTED with respect to Plaintiff's claims for Unfair Competition (Counts III and IV), Unjust Enrichment (Count V), and Tortious Interference with Economic Relations (Count VIII), and DENIED with respect to Plaintiff's claims for Misappropriation (Counts I and II), Breach of Fiduciary Duties (Counts VI and VII), and Breach of Contract (Count IX). Plaintiff was on notice of the potential deficiencies due to Defendant's pre-motion letter, [ECF No. 42], Plaintiff was granted leave to amend in response to the arguments raised in Defendant's pre-motion letter, [ECF No. 44], and Plaintiff did in fact decide to amend in response to Defendant's pre-motion letter, [ECF No, 45], and subsequently filed the Second Amended Complaint, [ECF No. 46]. Therefore, granting leave to amend here would be futile and Plaintiff's claims asserted in Counts III, IV, V, and VIII are dismissed with prejudice.

The Clerk of Court is respectfully requested to terminate the motion pending at docket entry 49.

**SO ORDERED.**

**Date:  March 18, 2025**
**New York, NY**

_Mary Kay Vyskocil_
**MARY KAY VYSKOCIL**
**United States District Judge**